## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALCOLM T. BYRD,

                Plaintiff,

       v.

CITY OF PHILADELPHIA
DEPARTMENT OF PUBLIC HEALTH
/ COMMISSIONER'S OFFICE,

                Defendant.

Civ. No. 05–2877

Pollak, J.                                                          October 30, 2007

## OPINION

Presently before the court is defendant City of Philadelphia's motion for summary judgment.  Discovery is complete, and the motion is now ripe for disposition.

### I.    Facts

Plaintiff Malcolm Byrd has worked for the City of Philadelphia Department of Public Health since 1988.  Pl.'s Ex. A, ¶ 1 (affidavit of Malcolm Byrd).  In 2002, while he was working as an assistant director in the department's central office, he sat for and passed the exam to qualify for a promotion to Health Services Administrator II ("HSA II").  *Id.* ¶ 14.  Because of his exam score, he was ranked fourth on a four-person list of employees eligible for such a promotion.  Def.'s Ex. 2 (HSA II eligibility list, dated Feb.

7, 2002).  In 2003, Byrd applied for a position as director of one of the department's

regional ambulatory health care centers, an HSA II position.[1]  *Id.* ¶ 15.  Over the course of

the year, the department filled three HSA II positions with the first three people on the

eligibility list.  Two of those people were, like Byrd, African American males.

In August 2003, the directorship of Health Care Center #9,[2] an HSA II position,

became vacant.  In October of that year, the department decided to appoint a temporary

director to fill the position while it conducted a search for a permanent director.  Byrd

was, at that time, the only candidate left on the eligibility list for open HSA II positions.

Pl.'s Ex. J, at 46 (deposition of David Ryba).  However, rather than appointing him

temporary director, the department appointed Joan Bland, a white female who was then

working as the health care coordinator of the center.  *Id.*  According to David Ryba,

operations manager at the center, this was sensible because Bland's position as health

care coordinator made her "the number two person" at the health center.  *Id.* at 46–47; *see

also* Pl.'s Ex. D, at 52 (deposition of Donna Jones).  Thus, Bland was already

wellacquainted with the center's operations.  Donna Jones, manager of human resources

for the department, further testified that the City's civil service regulations allow

---

[1] There is some divergence between City employees' official civil service titles, which determine their pay bands, and the titles they use on a day-to-day basis.  Here, the day-to-day title of the position for which Byrd applied was "Health Center Director," whereas the civil service title was "Health Services Administrator II."

[2] The City operates eight full-service health care centers: Health Care Centers #2 to #6, #9, #10, and the Strawberry Mansion Health Center.

department heads to depart from the eligibility list when the list contains but one person.

Pl.'s Ex. D, at 44–45.  However, Civil Service Regulation 12:02, the temporary

appointment regulation, appears to require that the temporary appointment be offered to

the person highest on the relevant eligibility list.[3]  *See* Pl.'s Ex. E (letter from Linda

Busillo to Bernard Bivens) (citing Phila. Civil Serv. Reg. 12:02 as the one under which

Bland was appointed to temporary director of Health Care Center #9).

It appears that, at the time of her appointment as temporary director, Bland was not

qualified for the position of director (as defined by the City's official job description)

because she did not have the requisite administrative experience.  *Id*. at 53–54.  Jones

testified that this was not a problem for purposes of a temporary appointment.  *Id*. at

46–48.  In addition, there was some controversy over whether Bland's master's degree—a

clinical degree in nursing—was acceptable, as the official job description required a

master's degree in public administration, industrial management or engineering, business

administration, hospital administration, public health, or political science with a major

concentration in public administration.  Pl.'s Ex. J, at 49 (deposition of David Ryba).  It is

not clear from the record who ultimately resolved this controversy in Bland's favor, or

why.

---

[3]  The operative language is as follows: "If, in the judgment of the Director, the position is in fact of a temporary nature, he/she shall certify the name of the person highest on an appropriate eligible list who is willing to accept temporary appointment.  If there is no person whose name is on the appropriate list who is willing to accept appointment, the Director shall certify for such temporary service any person deemed qualified."  Phila. Civil Serv. Regs. 12:02 (2007).

Bland sat for the HSA II exam while working as temporary director of the center,

having gained the required experience through her temporary directorship.  Pl.'s Ex. D, at

47 (deposition of Donna Jones).  She passed, and was ranked second on the list behind

Byrd.  Def.'s Ex. 2 (HSA II eligibility list, dated Aug. 17, 2004).  David Ryba testified

that he strongly recommended Bland over Byrd for the position of permanent director.

This recommendation, he said, stemmed from his impression that Byrd was not an

effective manager.  *See* Pl.'s Ex. J, at 32, 48.  In the summer of 2004, a three-person panel

interviewed both Byrd and Bland for the position of permanent director of the center.

Def.'s Ex. 3, at 34.  The panel of interviewers, chaired by the center's medical director,

Dr. Thomas Storey, unanimously recommended Bland.  Storey testified that his

recommendation was based on Bland's superior interview performance.  *Id.* at 51.  It

appears that Health Commissioner John Domzaski made the final decision.

After the department promoted Bland over Byrd, Byrd brought this action alleging

that the decisions not to appoint him as temporary or permanent director were based on

his race or gender in violation of Title VII of the Civil Rights Act of 1964 and the

Pennsylvania Human Relations Act ("PHRA").  Discovery is complete, and the City now

moves for summary judgment.

## II.      Legal Standard

Summary judgment is appropriate when "there is no genuine issue as to any

material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed.

-4-

R. Civ. P. 56(c).  The moving party "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks

omitted).  "If the moving party successfully points to evidence of all of the facts needed to

decide the case on the law short of trial, the non-moving party can defeat summary

judgment if it nonetheless produces or points to evidence in the record that creates a

genuine issue of material fact."  *El. v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir.

2007).

Title VII and PHRA claims alleging that the employers' decision was the result of

illegal discrimination are evaluated using the three-step, burden-shifting framework of

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[4]  *Marra v. Phila. Housing

Auth.*, 197 F.3d 286, 300 (3d Cir. 2007).

> Under the *McDonnell Douglas* paradigm, an employee must first establish a
> prima facie case of discrimination, after which the burden shifts to the
> employer to articulate a legitimate, nondiscriminatory reason for its adverse
> employment decision.  If the employer articulates one or more such reasons,
> the aggrieved employee must then proffer evidence that is sufficient to
> allow a reasonable finder of fact to find by a preponderance of the evidence
> that the employer's proffered reasons are false or pretextual.

*Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005) (internal citations omitted).

---

[4] Because the analysis in Title VII and PHRA claims is identical, I address the two
together.  *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n.3 (3d. Cir. 2000).

Here, the dispute centers on the third prong: whether plaintiff has submitted sufficient evidence showing that the City's proffered reason is a pretext for unlawful discrimination. Along these lines, the Third Circuit has held that all plaintiff need do is discredit the employer's proffered reasons. *Id.* at 185 (3d Cir. 2005). "'[T]he [employee] need not also come forward with additional evidence of discrimination beyond his . . . prima facie case' in order to survive summary judgment." *Id.* (*quoting Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996) (en banc)).

## III.   Analysis

For purposes of this motion, the City has conceded that Byrd can make out a prima facie case of discrimination. The City argues, however, that it has advanced a nondiscriminatory reason for its decisions, and that Byrd has not come forward with evidence discrediting those reasons or otherwise showing that the decisions were based on race or gender.

The only nondiscriminatory reason the City identifies in its briefing is Dr. Storey's assessment that Byrd's interview responses, though reasonable, were not as good as Bland's. Def.'s Mem. of Law in Support of its Motion For Summary Judgment, at 4, 8–9; *see also* Def.'s Ex. 3, at 51 (deposition of Thomas Storey). Dr. Storey testified that he did not remember the specific questions asked of either candidate, Def's Ex. 3, at 44–45, but he testified that he and the other two members of the interview panel concluded that Bland turned in the superior performance, *id.* at 51.

The most obvious problem with the City's reliance on Dr. Storey's assessment of

Bland's and Byrd's performance at the interviews is it is inapplicable to the City's initial

selection of Bland over Byrd for the temporary directorship, as the interviews took place

in the summer of 2004, nearly a year after Bland had already received the temporary

appointment.  Therefore, as to the temporary appointment, the City has not come forward

with a nondiscriminatory reason for selecting Bland over Byrd.  This means that the City

has not met its initial obligation of demonstrating the lack of any material factual dispute,

*Celotex*, 477 U.S. at 323, so I will deny summary judgment on the issue of whether the

City violated Title VII or the PHRA in not appointing Byrd to the position of temporary

director of Health Care Center #9.[5]

As to the permanent position, the City's proffered reason—superior interview

performance—is a subjective one.  This is not to say that it is illegitimate, but, as the Fifth

Circuit has recently noted, "[s]uch a reason will satisfy the employer's burden of

production . . . only if the employer articulates a clear and reasonably specific basis for its

subjective assessment." *Alvarado v. Tx. Rangers*, 492 F.3d 605, 616 (5th Cir. 2007).

Here, Dr. Storey was not able to remember much from the interviews.  When asked why

---

[5] It is possible that the City mistakenly concluded that Byrd was complaining only about
Bland's permanent appointment, but the temporary appointment is fairly at issue.  In his
complaint, Byrd alleged that Bland was appointed wrongfully to a position that became vacant
"[p]rior to or around June 2003."  Compl. ¶ 14.  This statement accurately references the position
of director of Health Care Center #9, and encompasses both Bland's temporary and permanent
appointments to that position.  Moreover, given that Byrd's deposition questioning focused on
both appointments, the City was on notice that the temporary appointment was and is at issue.

the panel preferred Bland to Byrd, he responded that:

> I can't recall specifics.  I can recall an impression.  The impression was that Joan [Bland] gave—it's a value word—better answers.  Whether they were more in depth or whether they showed more insight or whether they showed a better appreciation to all the aspects of whatever the situation was or question was, [*sic*] but that's what I recall.  I don't recall specifics.

Def.'s Ex. 3, at 51–52.  Given how little Dr. Storey was able to remember about the candidates' interviews, and given that the City has come forward with no written records memorializing the interviewers' impressions, the City is dangerously close to failing its burden of production.  Still, because Dr. Storey testified that Bland's answers were more in-depth, more insightful, and showed a better understanding of the situations presented her, I will regard the second prong of the *McDonnell Douglas* test as—weakly—fulfilled, and go on to examine whether Byrd has presented evidence calling the City's reason into question.

Putting together (1) the department's decision to appoint Bland over Byrd for the temporary appointment despite her not being on the eligibility list, and (2) that this appointment was needed to give Bland the administrative experience to qualify for the permanent position, a reasonable juror could infer that the City slated Bland for the permanent position all along.  This is not necessarily wrongful or discriminatory, but it could undermine the argument that it was Bland's interview performance that won her the job.

In addition, it appears that the City has not altered the formal description of the

HSA II civil service classification, which requires "possession of a master's degree . . . in

public administration, industrial management or engineering, business administration,

hospital administration, public health, or a master's degree in political science with major

concentration in public administration."  Pl.'s Ex. G (official description of HSA II

position, dated Oct. 1999).  Bland's clinical degree in nursing does not easily fit this

description.  While the City has discretion to interpret its own procedures (and thus is free

to determine that a clinical master's degree is sufficient), not following set procedures

raises questions about the fairness and openness of the process.  Allowing someone who

did not appear to qualify for the position to interview for it against a candidate who, on

paper at least, clearly did qualify, could leave reasonable jurors with the impression that

the City was, all along, taking care to see that Bland, not Byrd, would get the job.

The City asserts, however, that even if its proffered race-neutral reason is weak,

Byrd has offered no evidence connecting the hiring decision to any racial animus.  I

disagree.  The evidence that the City's proffered reason is not credible, combined with

evidence supporting Byrd's prima facie case, could support the conclusion that the City's

decision was based on Byrd's race.[6]  That there is little direct evidence of racism is not a

---

[6] While Byrd initially complained of gender-based discrimination as well, it appears that
he has abandoned that argument.  In his briefing in opposition to the motion for summary
judgment, he focused on racial discrimination.  Pl.'s Mem. of Law in Opp. to Def.'s Motion for
Summary Judgment, at 12 ("In this case, Defendant concedes that plaintiff can establish a prima
facie case, but asserts that plaintiff cannot establish that its reasons for promoting Joan Bland
were a pretext for race discrimination.  However, in this matter plaintiff can clearly show pretext
for discrimination." (internal citation omitted)); *id.* at 16 ("[I]t is clear that plaintiff can prove at
trial that he was wrongfully denied a promotion to the HSA position . . . because of his race.").

problem because

> we know from our experience that more often than not people do not act in
> a totally arbitrary manner, without any underlying reasons, especially in a
> business setting.  Thus, when all legitimate reasons for rejecting an
> applicant have been eliminated as possible reasons for the employer's
> actions, it is more likely than not [that] the employer, who we generally
> assume acts only with some reason, based his decision on an impermissible
> consideration such as race.

*Sheridan*, 100 F.3d at 1069 (*quoting Furnco Construction Co. v. Waters*, 438 U.S. 567,

577 (1978) (Rehnquist, J.)).  In short, because there is evidence on the basis of which a

factfinder could conclude that the City's one proffered reason for hiring Bland over

Byrd—superior interview performance—is not credible,[7] there is a legitimate, material

factual dispute as to whether the City's real reason for not appointing Byrd to the

permanent position of director of Health Care Center #9 was his race.  Therefore, I will

deny the City's motion for summary judgment on that issue.

An appropriate order will follow.

---

Therefore, I conclude that the gender discrimination is abandoned, and the trial will focus on
Byrd's allegation of racial discrimination.

[7] None of this is to say that the record could not arguably support other nondiscriminatory
reasons for preferring Bland to Byrd; it is only to say that in its briefing, the City, for whatever
reason, has advanced but one, and that one is, on this record, open to factual dispute.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALCOLM T. BYRD,
                    Plaintiff,

          v.

CITY OF PHILADELPHIA
DEPARTMENT OF PUBLIC HEALTH
/ COMMISSIONER'S OFFICE,
                    Defendant.

Civ. No. 05–2877

## ORDER

October 30, 2007

    For the reasons stated in the accompanying opinion, it is hereby ORDERED that

defendant's motion for summary judgment is DENIED.  It is further ORDERED that

plaintiff is directed to file a pretrial memorandum no later than two weeks from the date

of this order; defendant is directed to file a pretrial memorandum no later than four weeks

from the date of this order.

BY THE COURT:

/s/ Louis H. Pollak

_____

Pollak, J.